[Civ. No. 19280.   Second Dist., Div. Three.   July 3, 1953.]

Estate of GEORGE STANLEY CLELAND, Deceased. FLORENCE CLELAND, Respondent, v. HELEN RAYE CLELAND, Appellant.

Riedman & Silverberg for Appellant.

Bruce Mason and Clark Heggeness for Respondent.

VALLÉE, J.—Appeal by Helen Cleland from an order granting Florence Cleland a family allowance.  Whether there is any substantial evidence to support a finding that Florence Cleland is the widow of George Cleland is the question.

The material facts are these:

1. February 3, 1919—George and Florence were married in San Bernardino, California. They lived together until April, 1931.

2. April 26, 1931—George deserted and abandoned Florence.

3. May 23, 1936—George obtained a decree of divorce from Florence in Juarez, State of Chihuahua, Republic of Mexico. The decree did not contain a formal "declaration of execution."

4. May 25, 1936—George married Helen in Mexico.

5. George and Helen lived together as man and wife until George's death.

6. January 17, 1951—George died.

The court found: the law of the State of Chihuahua required that a decree of divorce be "declared executed"; if such a decree did not contain a formal "declaration of execution" it was not a final decree; the decree obtained by George did not contain a "declaration of execution" and was not a final decree; it was and is void; except for that decree, no decree dissolving the marriage of George and Florence has been rendered or entered by any court; the marriage of George and Helen was and is void. The court concluded that Florence is the surviving widow of George.

Helen assails the findings that under the laws of Chihuahua a final decree of divorce must contain a formal "declaration of execution" and that her marriage to George was void.

Florence did not appear in the action in Chihuahua. Dr. William B. Stern, foreign law librarian of the law library of the county of Los Angeles, qualified as an expert on the laws of the State of Chuhuahua. His testimony, epitomized, was as follows:

The law of Chihuahua, at the time in question, provided: The judge, before whom the cause was heard, announced his decision, and rendered his decree; immediately after the decree was rendered it was communicated to the parties present; if a party was not present, it was posted; such communication and posting constituted service of the decree; the parties had 24 hours after such service in which to appeal; after the time for appeal had elapsed, if no appeal was taken, the court was required to declare in the decree that the divorce was executed, in order that the decree be effective; the decree did not become final until the court had declared it

executed; a decree of divorce did not become executed by operation of law; the judge must have ordered it executed. The decree obtained by George recited that it was served on him personally and that it was posted. It was published as the law required. It did not and does not contain a declaration that the divorce was executed. The judge did not declare the divorce executed. The decree was not and is not final.

Section 1915 of the Code of Civil Procedure provides that "a *final* judgment of any . . . tribunal of a foreign country having jurisdiction, *according to the laws of such country,* to pronounce the judgment, shall have the same effect as in the country where rendered, and also the same effect as final judgments rendered in this state." (Italics added.) ▮ Under our statute the judgment of a court of a foreign country can never have any greater force than that given it by the laws of the country where pronounced, from which it derives its full force. The decree of the court of the State of Chihuahua should be given only such effect as it had by the laws of that state. (*Cf. Gilmer* v. *Spitalny,* 84 Cal.App.2d 39 [189 P.2d 744].)

▮ It appears from the evidence that under the law of the state of Chihuahua, as it existed at the time George obtained the decree, the court granted a sort of interlocutory decree of divorce which was appealable. There was no final decree of divorce until the court's adjudication had taken such form as to become effective as a final judgment, which did not occur until the court declared the judgment executed. The interlocutory decree was distinguished from the final decree in that it was not final or a conclusive determination of the status of the parties. The rendition of the interlocutory decree did not dissolve the marriage relation, and the parties thereto remained husband and wife until the marriage had been dissolved by a declaration, in the decree, that the divorce was executed. The evidence of Dr. Stern that we have narrated, amply supports the finding that the Chihuahua decree was not final.

Since the Chihuahua decree was not final, the trial court correctly concluded that George did not obtain a divorce from Florence and that she is his surviving widow. (*Cf. Estate of Pusey,* 180 Cal. 368 [181 P. 648] ; *Estate of Hancock,* 156 Cal. 804 [106 P. 58, 134 Am.St.Rep. 177].)

Helen asserts the court erred in not admitting evidence to show that Florence is estopped to assert that she (Helen) is not the surviving widow of George. Counsel say, "At the

time of the trial, there was an objection made to the introduction of any evidence on the ground of the pleading in the case.'' No reference to the record is given in support of this statement. (Rules on Appeal, rule 15 (a).) ■■ It is not the province of a reviewing court to assume the vexatious burden of searching the record to ascertain whether the trial judge made an erroneous ruling, or whether a party properly preserved a point in the trial court, or whether he sufficiently apprised the trial judge of the nature and purpose of the evidence he sought to introduce. However, a cursory examination of the reporter's transcript fails to reveal that any evidence was excluded on the ground ''of the pleading in the case.''

Our conclusion makes it unnecessary to consider other points made by Florence in support of the order.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 27, 1953.