**Herbert Allen YOUNG, Appellant,**

v.

**Nancy E. Young WILLIAMS, Appellee.**

**No. 3310.**

Supreme Court of Alaska.

Aug. 11, 1978.

Julie A. Clark, Paul J. Nangle & Associates, Anchorage, for appellant.

Vincent Vitale, Anchorage, for appellee.

Elizabeth Page Kennedy, Asst. Atty. Gen., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for amicus curiae, State of Alaska, Dept. of Revenue, Child Support Enforcement Agency.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

RABINOWITZ, Justice.

This is an appeal from an adverse judgment of the superior court, entered against appellant Herbert Young for payment of unpaid child support due under a California decree of divorce. Young alleges several specifications of error all of which we find devoid of merit.

Young and appellee Nancy Williams were married in California, and thereafter two children were born of the marriage. A California divorce decree entered in 1961 required Young to pay $75.00 per month for the support of each of two children until they reached majority. Since 1961, Young has made only intermittent support payments; he also has made some additional expenditures for the children. In an attempt to collect arrearages Nancy Williams instituted suit during 1975 in the superior court of Alaska; appellant was residing in Alaska at the time the action was brought. After trial to the court, judgment was entered on Williams' behalf in the amount of $34,278.81.

One of Young's specifications of error is that the superior court erroneously denied Young credit against his support obligation for $800.00 in payments made to his son, Herbert, Jr., paid in wages for services ren-

dered. During the summers of 1973 and 1974, Young's son, who was residing with his mother in California, flew up to live and work with him. The thirteen year old Herbert, Jr. worked on the construction of a fence and was paid $800.00. The superior court held that this amount should not be credited against Young's support obligation. However, the court did allow credit to Young for $225.00 because he had custody of Herbert, Jr., during this three month period; and thus, the court held the mother to have tacitly agreed to a suspension of support for that period.

■ The general rule in this area of child support is succinctly stated in *Briggs v. Briggs*, 178 Or. 193, 204, 165 P.2d 772, 777 (1946):

> [W]hen a defendant husband is required by a divorce decree to pay to the plaintiff money for the support of the children and the unpaid and accrued installments become judgments in favor of the plaintiff, he cannot, as a matter of law, claim credit on account of payments voluntarily made directly to the children, though special considerations of an equitable nature may justify a court in crediting such pay-

ments on his indebtedness to the plaintiff when that can be done without injustice to the plaintiff wife.[1]

Our overall conclusion is that the superior court has not erred in failing to grant Young the $800.00 credit.[2] The majority position is that payments voluntarily made to the children are not to be credited against child support obligations.[3] The rationale is that such voluntary payments to the children quite often are intended for particular purposes whereas the manner in which child support payments are used to meet the children's basic needs is left to the discretion of the parent or guardian with custody.[4] In those few cases in which credit has been granted, it is for payments made at the request of the parent or guardian with custody or for cash gifts used for child support, the disbursement of which was controlled by the parent or guardian with custody.[5] Furthermore, Young has already received benefit from his payments through receipt of the services rendered; to allow him credit for child support would amount to double payment. Thus, we are not persuaded that the superior court abused its discretion in denying the credit in question.

---

1. *See also* Annot., 47 A.L.R.3d 1031, at 1041–42 (1973).

2. The superior court granted credit for numerous other expenditures by Young or on behalf of the children.

   Finding of Fact No. 6 provides:
   [Young] made additional expenditures as follows:

   1971 $100.00 cash payment to [Williams]
   $200.00 payment for school clothes
   $700.00 to Dr. Chin for dental work provided to the parties' children

   1972 $200.00 for school clothes

   1973 $800.00 in wages for his son, Herbert, Jr.

   1974 $300.00 cash to Jeannie Young for school expenses
   $200.00 to [Williams]

   1975 $2,500.00 Partial Satisfaction of Judgment

   Additionally, Finding of Fact No. 9 provides:
   [Young] shall not receive credit for the $800.00 he paid to Herbert, Jr. as wages.
   Finally, Finding of Fact No. 10 provides:

   [Young] shall be credited with total payments in the amount of $7,470.00. [This includes $3,045.00 in child support payments.]

3. *See* Annot., 47 A.L.R.3d 1031, § 16[b], at 1058–61 (1973).

4. *See, e. g., Openshaw v. Openshaw*, 86 Utah 229, 235, 42 P.2d 191, 193 (1935), in which the court said:

   The payments to the children themselves do not appear to have been made as payments upon alimony, but were rather the result of his fatherly interest in the welfare of those children. We do not believe he should be permitted to charge them to plaintiff. By so doing he would be determining for Mrs. Openshaw the manner in which she should expend her allowances. It is a very easy thing for children to say their mother will not give them money, especially as they may realize that such a plea is effective in attaining their ends. If she is not treating them right the courts are open to the father for redress.

5. *See, e. g., Frazier v. Rainey*, 227 Ga. 350, 180 S.E.2d 725 (1971); *see also* Annot., 47 A.L.R.3d 1031, § 16[a], at 1057–58 (1973).

Young also asserts as a specification of error that the superior court erred in not finding that Williams' claim for unpaid child support from 1964 to 1970 was barred by laches. In regard to this issue, Williams testified that after the irregular support payments came to a total halt in mid-1964, she did nothing to enforce them or contact Young until 1970.[6]

The decision to sustain or deny a defense based on laches is properly addressed to the discretion of the trial court. It will not be overturned unless this court has a definite and firm conviction that a mistake has been committed.[7] As was noted in *Moore v. State*, 553 P.2d 8, 15 (Alaska 1976), a party asserting the defense of laches must meet two separate criteria: he must show (1) inexcusable delay and (2) that the delay resulted in undue prejudice.[8] Young's only showing of prejudice is that "by reason of this delay, he became liable for a much larger and more burdensome payment of child support, including accrued interest." Sufficient material prejudice will not be inferred, as Young contends, from mere lapse of a substantial period of time. In this regard, the Ohio Supreme Court stated in *Smith v. Smith*, 168 Ohio St. 447, 456, 156 N.E.2d 113, 120 (1959):

The only fact upon which defendant bases his claim of laches is the delay of plaintiff in asserting her right to obtain a 'lump-sum judgment' upon which execution may lawfully issue, for 14 years after the rights of the parties with respect to the amount due and owing on the judgment became fixed and unalterable. He has not attempted to show that he was materially prejudiced by such delay, and a material prejudice cannot be inferred from the mere lapse of the time mentioned. Defendant was instrumental in bringing into the world the child for whom the benefit of the support money was intended, and he assumed, in addition to the natural duties of a parent, a statutory duty to support the child until emancipation or majority. The weekly support order merely put a price tag on the statutory duty already existent. The defendant knew of the existence of his obligation of support before the divorce decree, and the extent of such obligation was fixed by the installment support order included in the judgment of divorce. The mere fact that he failed to meet such obligation does not mean that he was excused therefrom; it simply means that someone assumed his duty of support, for, in the absence of evidence to the contrary, the court will presume that the child was clothed, fed and generally accorded the necessities of life, the payment for which the weekly support money was intended.[9]

We are persuaded to follow the Ohio court's reasoning and thus conclude that sufficient

---

6. In this regard, Williams testified:

Q. And you have no idea why the support payments stopped in mid-1964?
A. No, I don't.
Q. It wasn't because of anything you told Mr. Young?
A. No.
Q. Why didn't you go after the district attorney and say, hey, let's get this guy going again?
A. Because I was working and I had a good job.
Q. And you didn't need the money?
A. I could have used the money for the children, yes, but I just decided it was too much hassle and it is a big hassle to get child support in Yolo County.
Q. And you didn't do anything then for how many years?
A. Until 1970. I wasn't working in 1970.

7. *Moore v. State*, 553 P.2d 8, 15 (Alaska 1976), *Concerned Citizens of South Kenai Peninsula v. Keni Peninsula Borough*, 527 P.2d 447, 457 (Alaska 1974).

8. In actions for child support payments, the need for prejudice to support a defense of laches is widely accepted. *See Baures v. Baures*, 13 Ariz.App. 515, 478 P.2d 130, 135 (1970); *Bradford v. Futrell*, 225 Md. 512, 171 A.2d 493, 500 (1961); *Maule v. Kaufman*, 33 N.Y.2d 58, 349 N.Y.S.2d 368, 371–373, 304 N.E.2d 234, 236–37 (1973); *Grossman v. Grossman*, 242 S.C. 298, 130 S.E.2d 850, 855 (1963); *see also* Annot., 70 A.L.R.2d 1250, § 5[a], at 1270 (1960).

9. *See also Cullinan v. Cullinan*, 226 N.W.2d 33, 36 (Iowa 1975); *Finnern v. Bruner*, 167 Neb. 281, 92 N.W.2d 785, 788 (1958).

prejudice has not been established on the record and, therefore, the equitable doctrine of laches should not apply.[10] In the case at bar, we find the superior court did not abuse its discretion by rejecting the defense of laches.

Young's third specification of error is that the superior court erred in not excluding all evidence of child support payments barred by the statute of limitations.

■ The superior court held that child support payments were judgments at the time each payment accrued.[11] Thus, the applicable statute of limitations on actions to recover arrearages in child support pay-

ments is that applicable for judgments, which is ten years.[12] In order to resolve the question whether support payments made during the period from 1966 to 1975 should be credited against support obligations for this same period, the superior court took evidence as to support obligations and payments made for the period from 1961 to 1965.[13] This was done because the superior court concluded that "[a]ll sums paid or credited shall be applied to the oldest arrearage" not extinguished by the statute of limitations.[14] Since the total credit for all of Young's payments made in the period 1966 to 1975 was applied to obligations which accrued prior to 1966, Young received

---

**10.** *Smith v. Smith,* 168 Ohio St. 447, 156 N.E.2d 113, 120 (1959).

**11.** Amicus Curiae specifically requests that we find that child support payments, once they become due and owing, are judgments. This issue is not attacked on appeal by either party. Thus, we find it unnecessary to review its correctness in this case, although we note that it is the law in other states. *See Kephart v. Kephart,* 89 U.S.App.D.C. 373, 380, 193 F.2d 677, 684 (1951), *cert. denied,* 342 U.S. 944, 72 S.Ct. 557, 96 L.Ed. 702 (1952); *Parhm v. Parhm,* 2 Cal.App.3d 311, 82 Cal.Rptr. 570, 572 (1972); *Hauck v. Schuck,* 143 Colo. 324, 353 P.2d 79, 80 (1960); *Riney v. Riney,* 205 Kan. 671, 473 P.2d 77, 80 (1970); *cf. Slade v. Slade,* 81 N.M. 462, 468 P.2d 627, 629 (1970) (child support payments are judgments in installments but each becomes vested when due and unpaid and the statute of limitations on judgments runs from the moment it vests).

**12.** The superior court, in its conclusions of law, stated:

> The applicable statute of limitations governing plaintiff's [claim] is ten years. This is true under both Alaska and California law. The statute of limitations applies to each support installment payment as each payment becomes due.

The applicable Alaska statute is AS 09.10.040 which provides:

> *Action upon judgment or sealed instrument in 10 years.* No person may bring an action upon a judgment or decree of a court of the United States, or of a state or territory within the United States, and no action may be brought upon a sealed instrument unless commenced within 10 years.

Young also contends, as an additional specification of error, that the superior court improperly applied California law in using the 10-year judgment rule. California law was possibly at issue since the marriage was entered into and

the divorce granted in California. However, since the result would be the same under the law of either state, there is no conflict of law issue and the law to be applied is that of the forum. *See* Ehrenzweig, Conflicts of Law, § 102, at 311 (1962). This argument was apparently made to bolster the position taken by Young that we should hold barred by the statute of limitations evidence concerning payments made or owing for the period and that the superior court erred in following the California position based on *Parhm v. Parhm,* 2 Cal.App.3d 311, 82 Cal.Rptr. 570 (1969). We do not find that the record reflects that the superior court made this determination as a matter of California law. We conclude that the superior court properly addressed this as a matter of Alaska law and the reference to *Parhm* was merely to the persuasive reasoning of a sister court.

Further, we note that this issue—confusingly and inadequately briefed—was not raised at trial and not specified in Young's points on appeal. An issue first raised in an appellate brief is not properly before this court and is considered waived. *See* Appellate Rule 9(e).

**13.** The court found that Young had paid $1,720 toward his obligation for years 1961 through 1965. During this period a total of $9,000 was owing in arrearages.

**14.** *See Chudzinski v. Chudzinski,* 26 Ariz.App. 130, 132, 546 P.2d 1139, 1141 (1976). The Arizona court, in *Chudzinski,* states:

> It is the general rule that a debtor may, if he chooses, direct that a payment made by him be applied to one of several obligations owed to the creditor. If he fails to do so, the creditor may apply the payment where he chooses. If the creditor fails to do so, the law will apply the payment to the oldest debt.

*Id.* (citations omitted)

no credit against support obligations owing from 1966 to 1975.[15]

Young argues that the superior court was barred from considering the earlier period (i. e. 1961 to 1965):

> In the case of appellant, this would result in the exclusion of evidence as to all payments due from 1961 to 1965, as well as payments made by appellant. Payments and credits to appellant during the period from 1966 to 1975 would then be applied to the earliest unpaid obligations during that period.

■ Claiming that the period from 1961 to 1965 is now barred by the ten-year statute of limitations since this action was brought in 1975, Young contends that no consideration should be given to this earlier period. However, he advances no legal support for this argument [16] and we can find none. The superior court properly considered what support obligation Young had during the 1961 to 1965 period and what payments he had made against it. Thus, by ascertaining what was still owing on this debt during the period 1965 to 1975 the court was able to compute the extent to which the payments Young made after 1965 were applicable to the pre-1965 debt and to the post-1965 debt. The application of a payment to the oldest outstanding debt is to be computed as of the date the payment was made and not as of when the suit was filed to enforce the underlying judgment.[17] Thus, although the entire debt from 1961 through 1965 was barred by the statute of limitations when this action was brought in 1975, this was not the case when the various payments were made by Young prior to

1975. Those payments properly are to be credited against the debt.

In *Parhm v. Parhm*, 2 Cal.App.3d 311, 82 Cal.Rptr. 570, 574 (1969), the trial court took a position similar to that urged by Young and excluded evidence of child support obligations and payments for the period barred by the statute of limitations. The California court of appeals concluded that the case must be remanded because the trial court was unable properly to determine the extent to which the payments made during the period not barred were entitled to be credited against the obligation now being sued on, lacking a complete accounting of the earlier period.[18] We find no error in the superior court's consideration of both the support obligation and payments made during the earlier period in order to be able fully to evaluate what credit should be given for later payments.

■ As a final issue, Young alleges that the trial court erred in not finding that certain payments made by Young should not have been applied against the oldest existing arrearages, but instead should be applied against current obligations because that was Young's clear intention.[19] This issue was never presented to the trial court and was not addressed in appellant's points on appeal or opening brief. Instead, it was raised for the first time in appellant's reply brief. This is in violation of Appellate Rule 9(e), which provides, in part:

> At the time of filing his notice of appeal, the appellant shall serve and file . . a concise statement of the points on appeal. The court will consider nothing but the points so stated.

---

15. The court in its Findings of Fact No. XII stated, in part:

> All sums paid or credited shall be applied to the oldest arrearage. A total of $9,000.00 was owed for the five calendar years between 1961 and 1965. The total credit to Defendant amounts to $7,470.00. Hence, for the calendar year 1965, Defendant's unpaid arrearage amounted to $1,530.00. For each of the remaining ten years between 1966 and 1975, Defendant's arrearage amounted to $1,800.00 per year. Defendant's total principal arrearage is $18,000.00

16. Young states that his position is supported by Washington cases construing the Washington statute of limitations of judgments, Wash.Rev.Code § 4.56.210. However, he cites no cases on point, and we have found none.

17. *See Parhm v. Parhm*, 2 Cal.App.3d 311, 82 Cal.Rptr. 570, 574 (1969).

18. *See also Robles v. Robles*, 26 Ariz.App. 129, 546 P.2d 1138 (1976); *Chudzinski v. Chudzinski*, 26 Ariz.App. 130, 546 P.2d 1139 (1976).

19. *See note 13, supra.*

Appellate Rule 9(e) further provides for supplementing the points on appeal:

On motion, and for cause, the statement of points may be supplemented subsequent to the filing of the designation of record.

Young made no attempt to supplement the points on appeal. He merely added a new issue for this court's consideration in his reply brief in contravention of the appellate rules. Since the issue is not properly before us, we consider it waived.[20]

Affirmed.

---

**20.** We also take note that this issue and, in large part, most of the issues raised on appeal by Young are inadequately briefed. *See Euwer v. City of Palmer,* 572 P.2d 436, 438 (Alaska 1977); *Dickerson v. Geiermann,* 368 P.2d 217, 218 (Alaska 1962).